# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CALIFORNIA COAST UNIVERSITY, :
:
    Appellant, :
:
v. : 3:16-cv-00158
: (JUDGE MARIANI)
JAMIE SUE ALECKNA, :
: (BANKRUPTCY APPEAL)
    Appellee. :

## MEMORANDUM OPINION

### I. INTRODUCTION

This case comes before the Court on appeal from an opinion and judgment issued by Middle District of Pennsylvania Bankruptcy Court Judge Robert Opel on January 14, 2016. (Doc. 1-1, 1-2). Appellant, California Coast University, raises two issues on appeal. First, Appellant argues that the Bankruptcy Court erred when it ruled that the Appellant's violation of an automatic stay was willful. (Doc. 14, at 1). Second, Appellant argues that the Bankruptcy Court erred when it awarded Appellee the time lost from work to attend the trial in this mater as Appellee's only actual damages. (*Id.*) For the reasons that follow, the Court will affirm the Bankruptcy Court's order and remand the case in accordance with the Bankruptcy Court's order for a determination of attorneys' fees and costs.

### II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Jamie Sue Aleckna, Appellee, was a student at California Coast University, Appellant, and completed her coursework in September 2009. (Doc. 5-5, at 147). During her

time as a student, she failed to make tuition payments due to the Appellant in or about 2008. (*Id.* at 166). Pursuant to its protocol, Appellant put a financial hold on Appellee's account, however, Appellant did not pursue any collection efforts. (*Id.* at 156-57; 188). On June 1, 2012, Appellee and her husband filed for bankruptcy. (*Id.* at 151-52). Then, the Bankruptcy Court issued the statutorily-mandated automatic stay. (*Id.*) In her bankruptcy schedule, Appellee listed Appellant as an unsecured creditor with a disputed claim in the amount of $6,300. (*Id.* at 152; Doc. 5-1, at 182). The debt was listed as disputed because Appellee was not sure if the debt was a student loan or dischargeable by the Bankruptcy Code. (Doc. 5-5, at 153).

On July 6, 2012, Appellee contacted Appellant by phone to request a copy of her transcript. (*Id.*). Appellee was told by the Registrar, Angelina Cenina, that she could not obtain her transcripts because she owed tuition to the Appellant, there was no record of her bankruptcy, and that a request for an official transcript must be submitted in writing. (*Id.* at 188). Eventually, after involving her attorneys, Appellee provided the bankruptcy petition and schedules and requested the release of the transcript. (Doc. 7-4). Appellant mailed Appellee the transcripts, however, the transcripts did not list any date for graduation. (Doc. 7-5). Appellee, on August 7, 2012, called to inquire why the graduation date was missing and was told that she "did not technically graduate" because of the outstanding debt. (Doc. 5-5, at 142).

Appellant then initiated the proceeding by filing an action to declare Appellee's tuition obligation as non-dischargeable. (Doc. 5, at 2). On September 7, 2012, Appellee filed a counterclaim, containing a count for violation of the automatic stay, and two counts for attorneys' fees and compensatory damages, punitive damages, costs and contempt of court (*Id.*). On February 5, 2014, Appellee sought leave of the court to amend her counterclaim, which the Bankruptcy Court granted (*Id.* at 11). On April 10, 2014, Appellee filed the amended counterclaim to allege that she had graduated and that she had been awarded a degree. (*Id.* at 12).

On October 9, 2015, the Bankruptcy Court held a trial on the amended complaint and held that Appellant willfully violated the stay by failing to issue a transcript with a graduation date. (Doc. 1-2, at 11-13). On January 14, 2016, the Bankruptcy Court issued its decision, holding that Appellant "willfully violated" the automatic stay by withholding the transcript without a graduation date, and thus, Appellee was entitled to "actual damages." (*Id.* at 11). In his award, Judge Opel ordered Appellant to provide Appellee with a transcript that included a graduation date and issue a diploma. (*Id.*). In addition, Appellant was ordered to pay $230.16 in actual damages (based on eight hours leave time from her work in order to attend trial), plus attorneys' fees and costs. (*Id.* at 12). Based on Appellee's itemized statement, the attorneys' fees amounted to $100,000 and $3,927.12 in expenses, to which Appellants objected. (*Id.* at 13; Doc. 14 at 42).

3

On January 28, 2016, Appellant filed this appeal. (Doc. 1). On January 29, 2016, Appellant complied with the Bankruptcy Court's order by changing the transcript to include a graduation date of January 29, 2016 and by issuing a diploma to Aleckna. (Doc. 14, at 4). The Court held oral argument on this appeal on August 20, 2019.

### III. JURISDICTION AND STANDARD OF REVIEW

The District Court has jurisdiction to hear this appeal from a Bankruptcy Court's final order pursuant to 28 U.S.C. § 158(a)(1). The Court reviews "the Bankruptcy Court's findings of fact for clear error and exercise[s] plenary review over questions of law." *In re Hechinger Inv. Co. of Delaware, Inc.*, 489 F.3d 568, 573 (3d Cir. 2007). "A finding of fact is clearly erroneous only if it is 'completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data.'" *Havens v. Mobex Network Servs., LLC*, 820 F.3d 80, 92 (3d Cir. 2016) (quoting *Berg Chilling Sys., Inc. v. Hull Corp.*, 369 F.3d 745, 754 (3d Cir. 2004)).

### IV. ANALYSIS

California Coast appeals the Bankruptcy Court's decision on two grounds. First, it argues that its violation of the automatic stay[1] could not be "willful" because the law governing whether withholding a complete transcript (with a graduation date) is unsettled. (Doc. 14, at 20-22). Second, it appeals on the grounds that actual damages awarded to

---

[1] In its Brief, Appellant states that "[f]or the purposes of this appeal, California Coast does not challenge the Bankruptcy Court's determination that there was a violation of the automatic stay." (Doc. 14 at 14). Therefore, the Court finds that the Appellant concedes its actions were a violation of the stay.

4

Appellee for taking time off from work to attend trial were improperly awarded to her and "without any actual damages there can be no 'willful' violation of the automatic stay." (Doc. 14 at 45). The Court addresses each issue separately below.

## A. Willful Violation of Automatic Stay

Section 362(k)(1) of the Bankruptcy Code provides for actual damages upon injury from a "willful violation" of an automatic stay. See 11 U.S.C. § 362(k)(1). The Third Circuit has held that:

> A 'willful violation' does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional.
> Whether the party believes in good faith that it had a right to property is not relevant to whether the act was 'willful' or whether compensation must be awarded.

*Cuffee v. Atl. Bus. & Cmty. Dev. Corp. (In re Atl. Bus. & Cmty. Corp).*, 901 F.2d 325, 329 (3d Cir. 1990) (quoting *In re Bloom*, 875 F. 2d 224, 227 (9th Cir. 1989)).

In support of its contention that it did not willfully violate the automatic stay, Appellant points to *In re University Medical Center*, 973 F.2d 1065, 1089 (3d Cir. 1992) (hereinafter "*University Medical Center*"), which, it argues, provides that "there can be no 'willful' violation of the automatic stay where there is legal support for the position taken so that it 'was sufficiently uncertain.'" (Doc. 14, at 21). Appellee contends, relying on *In re Mu'min*, 374 B.R. 149 (Bankr. E.D. Pa. 2007), that *University Medical Center* was "legislatively overruled" by the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act

5

("BAPCPA"). (Doc. 17, at 16-22). Appellee also argues that even if *University Medical Center* was not legislatively overruled, it does not apply because (1) the caselaw involving automatic stays and the withholding of transcripts is sufficiently settled (*id.* at 22-30), and (2) Appellant did not rely on any authority at the time of the violation of the automatic stay[2] (*id.* at 42-45).

The Court first addresses the contention that BAPCPA legislatively overruled *University Medical Center*. The Third Circuit in *University Medical Center* interpreted *Atlantic Business* and held that "actions . . . taken in reliance on statutory direction and case law support, were not 'willful' as we have defined them in Section 362(h)[3] or in our expectation of it in *Atlantic Business*." *In re Univ. Med. Ctr.*, 973 F.2d at 1089.

In 2005, Congress enacted BAPCPA. In doing so, Congress modified the Code provision addressed in *University Medical Center* and added Section 362(k)(2), which provides: "If such violation is based on an action taken by an entity in good faith that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages." 11 U.S.C. § 362(k)(2).

---

[2] In the "Brief of Appellee Jaime Sue Aleckna" (Doc. 17), Appellee also argues that Appellant "waived" the right to raise this argument because it did not plead or introduce any evidence to support it. (Doc. 17 at 38-41). The Court rejects this argument insofar as the issue is a matter of law, and the Court may exercise plenary review over questions of law.

[3] While *Atlantic Business* and *In re University Medical Center* interpret Section 362(h), this provision was renumbered 362(k) in 2005 as part of the BAPCPA.

Appellee directs the Court to *In re Mu'min*, 374 B.R. 149 (Bankr. E.D. Pa. 2007), which held that *University Medical Center* was legislatively overruled by BAPCPA:

> With Congress having addressed the issue of a good faith exception to 362(k) liability expressly through the BAPCPA, the plain language of 362(k)'s exception does not encompass other types of arguably good faith conduct that Congress could have chosen to exempt from liability. Given this carefully constructed exception drawn by Congress, I conclude that *University Medical Center* is inconsistent with 362(k), insofar as the case held that a party is not subject to actual damages for voluntary acts taken with knowledge of the bankruptcy case in violation of the automatic stay when a party relies upon "persuasive legal authority" and the law on the issue is sufficiently unsettled.

*In re Mu'min*, 374 B.R. at 169.

This Court declines to adopt *In re Mu'min*. As the Third Circuit in *University Medical Center* explained:

> The actions of the [Creditor] were neither in defiance of a court order nor were they contrary to certain contemporaneous interpretations of sections 362 and 365. The [Creditor] believed in "good faith" that he was not violating the stay. This of course is not sufficient under *Atlantic Business* to escape liability under 362(h). However, the [Creditor] also had persuasive legal authority which supported his opinion. For this reason we conclude that the withholding ... did not fall within the parameters of "willfulness" as such actions have been described in *Atlantic Business*.

*In re Univ. Med. Ctr*, 973 F.2d at 1088. Put differently, "the defense to a finding of 'willfulness' articulated in *In re University Medical Center* was not one of 'good faith' but one of lack of willfulness because the unsettled law permitted a reasonable belief that the stay was not being violated." *Stancil v. Bradley Invs., LLC (In re Stancil)*, 487 B.R. 331, 344 (Bankr. D.D.C. 2013). As such, the analysis in *University Medical Center* is separate and distinct from the "good faith" defense contemplated in § 362(k)(2). Therefore, absent some

7

clearly expressed indication that Congress intended to legislatively overrule *University Medical Center*, the Court cannot conclude that *University Medical Center* was overruled by Congress enacting BAPCPA and adding § 362(k)(2).

Further, the lack of any legislative history also supports the conclusion that Congress did not legislatively overrule *University Medical Center*. The Third Circuit has held that "courts should be reluctant to accept arguments that would interpret the Bankruptcy Code to effect a major change in pre-Code practice, absent at least some suggestion in the legislative history that such a change was intended." *In re VistaCare Group, LLC.*, 678 F.3d 218, 228 (3d Cir. 2012). And, "[w]hen Congress enacts legislation, it is presumed to act with knowledge of the 'existing law and judicial concepts.'" *Id.* at 226 (quoting *Farina v. Nokia Inc.*, 625 F.3d 97, 112 (3d Cir. 2010)). Here, where *University Medical Center* was decided nearly 13 years prior to BAPCPA, and where "there is no legislative history establishing conclusively that Congress intended to circumscribe the good faith exception under 362(k) in the BAPCPA or, if so, the particular reasons it chose to do so," *In re Mu'min*, 374 B.R. at 169, there is no authority to suggest, yet alone conclude, that BAPCPA legislatively overruled *University Medical Center*. In light of the foregoing, the Court concludes that BAPCPA did not legislatively overrule *University Medical Center*.[4]

---

[4] Appellant, in a supplemental brief (Doc. 29), also raise the recently-decided Supreme Court case, *Taggart v. Lorenzen*, 139 S.Ct. 1795 (2019), as support for ruling that *University Medical Center* was not legislatively overruled by BAPCPA. (Doc. 29, at 3). Because the Court has already determined that *University Medical Center* was not legislatively overruled by BAPCPA, the Court declines to address the argument. The Court also declines to address that argument because the Supreme Court in *Taggart* specifically distinguished the language and purposes of Section 523 (which was at issue in that case) from

8

Having determined that BAPCPA did not legislatively overrule *University Medical Center*, the Court will turn to whether *University Medical Center* applies to sustain the Appellant's position. In *University Medical Center*, the Third Circuit held that the Department of Health and Human Services' withholding of University Medical Center's medical reimbursement for services rendered post-petition was a violation of § 362's automatic stay provisions, but that the violation was not willful. *In re Univ. Med. Ctr.*, 973 F.2d at 1089.

In ruling that the violation was not willful, the Third Circuit focused on the fact that "the Secretary [of the Department of Health and Human Services] had persuasive legal authority which supported his opinion." *Id.* at 1088. There, the Medicare statute, which the Secretary relied on, arguably gave him the authority to determine the amount to be paid to service providers through Medicare and to pay those amounts at such times as he believed appropriate with "necessary adjustments on account of previously made overpayments or underpayments." *Id.* Moreover, "there were a number of decisions from bankruptcy and district courts" which also supported the Secretary's position. *Id.* The Third Circuit concluded that because "[t]he Secretary . . . had persuasive legal authority which supported his position . . . the withholding . . . did not fall within the parameters of 'willfulness' as such actions have been described in *Atlantic Business*." *Id.*

---

Section 362 such that the *Taggart* is not applicable to cases, such as this matter, that deal with Section 362. *See Taggart*, 139 S. Ct. at 1803-04.

9

Therefore, under *University Medical Center*, to establish a lack of willfulness, the law must be unsettled and the creditor must take an action in reliance on some persuasive authority. Here, however, Appellant fails to point to any persuasive authority to suggest that the law may be unsettled and fails to show that it relied on any authority when making the decision to withhold Appellee's complete transcript.

With respect to the first point, the law is, in fact, well settled that an automatic stay is violated, where as here, a creditor withholds a debtor's transcript because of an outstanding debt during the pendency of a Chapter 13 bankruptcy proceeding. *See, e.g., In re Mu'min*, 374 B.R. at 166; *Andrews Univ. v. Merchant (In re Merchant)*, 958 F.2d 738 (6th Cir. 1992) (holding that University failing to turn over transcript violated the automatic stay); *In re Parker*, 334 B.R. 529, 536 (Bankr. D. Mass. 2005) (ruling that "the act of not allowing Parker to register for a class and for graduation . . . violated the automatic stay."); *In re Gustafson*, 111 B.R. 282 (Bankr. 9th Cir. 1990), *rev'd. on other grounds*, 924 F.2d 216 (9th Cir. 1991) (holding that withholding transcripts is a violation of an automatic stay). Indeed, courts have held that the withholding of a transcript based upon a financial hold, during a pending bankruptcy proceeding, is an action designed to collect an unpaid debt. *See, e.g., Andrews Univ.*, 958 F.2d at 741 ("Various courts have found that the withholding of a debtor's transcript or the refusal to issue a transcript until a debtor pays a prepetition debt is an act to collect, assess or recover a prepetition debt and thus a violation of Section 362.").

Appellant contends that these cases are not relevant because they only address whether the withholding of a transcript constitutes a violation of the automatic stay, not whether a transcript must include a graduation date. (Doc. 14, at 40-42). However, as the Bankruptcy Judge noted, a transcript without a graduation date is "akin to a letter of reference with no signature" (Doc. 1-2 at 11). Indeed, a transcript without a graduation date is essentially worthless. Moreover, the record is clear that but-for the Appellee's outstanding debt, the Appellant would have issued the transcript with a graduation date. (Doc. 5-5, at 65-66). Thus, Appellant's refusal to provide a *complete* transcript is no different from withholding a transcript altogether – both are actions based on outstanding debts designed to collect the unpaid debt. *See, e.g., In re Gustafson*, 111 B.R. at 286-87 ("Withholding the transcript could serve no purpose other than to compel the repayment of the debt or reaffirmation of the obligation."). Accordingly, the cases involving the withholding of a transcript are clearly relevant to discerning Appellant's obligation to provide the complete transcript and suggest that the law is well-settled.

Nonetheless, Appellant cites to, as indicative of the unsettled state of the law and in support of its reliance, *Johnson v. Edinboro State College*, 720 F.2d 163 (3d Cir. 1984), *In re Billingsley*, 276 B.R. 48 (Bankr. D. N.J. 2002), and *Najafi v. Cabrini College (In re Najafi)*, 154 B.R. 185 (Bankr. E.D. Pa. 1993). Appellant argues that these cases stand for the proposition that withholding a transcript does not violate an automatic stay. (Doc. 14, at 39).

The Court disagrees that these cases provide persuasive authority sufficient to render the state of the law unsettled because these cases are distinguishable from the case at hand. *Johnson v. Edinboro State College* is inapposite because it deals with § 525 of the Bankruptcy Code, which provides statutory protection from discrimination to those who file petitions under the Code. See *Johnson*, 720 F.2d at 164-65. Thus, *Johnson* only stands for the proposition that a Chapter 7 debtor cannot seek relief under § 525 when his college withholds a transcript to seek repayment of a non-discharged, overdue loan. See *id.* at 166. It makes no mention of § 362, and thus, it cannot be applicable to interpreting § 362.

Additionally, *Billingsley* and *Najafi*, are distinguishable on two grounds. First, to some extent, both cases erroneously relied on *Johnson* to conclude that withholding a transcript does not violate an automatic stay. See *Billingsley*, 276 B.R. at 50-53; *Najafi*, 154 B.R. at 191-95. Second, both courts relied on the fact that the debt at issue was non-dischargeable to conclude that withholding the transcript did not violate the automatic stay. See *Billingsley*, 276 B.R. at 49 ("[T]he court holds that where the student loan is concededly non-dischargeable, a private educational institution does not violate the automatic stay by withholding the transcript of a student debtor who has defaulted on her loan); *Najafi*, 154 B.R. at. 194 ("It appears to us that the college has a 'special interest' in transcripts of its students, unless their debt is deemed non-dischargeable, which is comparable to, if not legally the equivalent of, a security interest to protect the college for losses in engaging in its normal undertaking to supply the transcript.").

Here, Appellant's credit was categorized as dischargeable in the Voluntary Petition, which was later adopted by the Court. (Doc. 5-1, at 182). Appellant failed to timely file a Proof of Claim, which prompted an objection by the Trustee, as to which California Coast, after notice and being granted an opportunity to respond, failed to do so. (Doc. 5-2, at 9; Case 5:12-bk-03367-RNO, Doc. 78). These actions resulted in an order from the Bankruptcy Court deeming California Coast's claim to be untimely filed. (Case 5:12-bk-03367-RNO, Doc. 78). Although Appellant also commenced an action against Appellee to request that Appellant's claim against Appellee be determined to be non-dischargeable, on September 4, 2013, Appellant filed a motion to withdraw its complaint, which the Bankruptcy Court granted. (Doc. 1, at 9). Finally, on April 13, 2016, Appellee's debt to Appellant was discharged. (Doc. 5-2, at 9). In light of the above, Appellant does not point to any relevant cases to render the law "unsettled" or suggest that persuasive authority exists on which it relied.

To the extent that *Johnson*, *Billingsley*, and *Najafi* could be deemed persuasive authority, however, Appellant's actions are still distinguishable from *University Medical Center* because the Secretary in *University Medical Center* relied on authority at the time it took action. *In re Univ. Med. Ctr.*, 973 F.2d at 1089. In contrast, here, Appellant provided no indication that it relied on any authority at the time it decided to withhold issuing a transcript with a graduation date or refuse to issue a diploma.

Accordingly, the Court concludes that *University Medical Center* does not support the Appellant's position. As such, the Bankruptcy Court did not err in finding California Coast's violation to be a "willful" violation of the automatic stay.

### B. Injury and Damages

Section 362(k)(1) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." Courts have interpreted this section to require injury as a condition precedent to actual damages. *See City of Phila. v. Walker*, 2015 WL 7428501, at *3 (E.D. Pa. 2015) ("Section 362(k)(1) makes clear that injury is a condition precedent to any request for actual damages"); *Rosas v. Monroe Cnty Tax Claim Bureau*, 323 B.R. 893, 901 (Bankr. M.D. Pa. 2004) ("I have heretofore held that actual injury is a condition precedent to the award of damages, including attorney's fees and punitive damages.").

Appellant contends that the Bankruptcy Court erred in awarding Appellee actual damages for lost wages to attend her own trial and that no other injury exists to satisfy the condition precedent. This Court disagrees.

Appellee endured the exact injury that Congress intended to protect debtors from when Congress enacted a broad automatic stay provision. The Third Circuit, in summarizing and adopting a Ninth Circuit decision, emphasized the legislative history of the Code to describe the purpose behind the provision:

> [T]he court emphasized that Congress enacted the automatic stay not only to provide creditors financial protection, but also to provide "the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy."

*Lansaw v. Zokaites (In re Lansaw)*, 853 F.3d 657, 666 (3d Cir. 2017) (citing *Dawson v. Wash. Mut. Bank (In re Dawson)*, 39 F.3d 1139, 1147 (9th Cir. 2004)). The Third Circuit concluded "that Congress intended the automatic stay to protect financial and non-financial interests." *Id.* at 667. As such, and as Appellee argues (Doc. 17, at 48-51), it follows that Appellee was injured by being deprived of her complete transcript. In other words, Appellee was lawfully entitled to her complete transcript, however, because she did not pay her outstanding debt, Appellant withheld the complete transcript. This was, as discussed earlier, an action designed to collect the unpaid debt. Consequently, it was among the injurious activities that Section 362 was enacted to protect against. Other courts have similarly held that acts designed to collect a debt, like the one in this matter, are injuries and thus give rise to actual damages. *See, e.g., In re Gustafson*, 111 B.R. at 288 ("Thus, notwithstanding the fact that the debtor may have suffered no injury other than his attorneys fees, the fact that the debtor was forced to resort to the courts to obtain the transcript withheld in violation of the stay and the fact that the debtor incurred attorneys fees in doing so demonstrates a compensable injury under section 362."); *Parker v. Boston Univ. (In re Parker)*, 334 B.R. 529 (Bankr. D. Mass. 2005) (holding that University's refusal to allow student to register for classes violated automatic stay, and, therefore, student was entitled to actual damages).

This Court's determination that Aleckna was injured as a result of being deprived of her complete transcript is buttressed by the Third Circuit's recent opinion in *DiNaples v. MPS BPO, LLC.*, -- F.3d --, 2019 WL 3773014 (3d. Cir. 2019). In that case, the Third Circuit emphasized that "'the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact,' and 'a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified.'" *DiNaples*, 2019 WL 3773014 at *2 (quoting *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1549 (2016)). Thus, Aleckna suffered a concrete injury when California Coast refused to give her a complete transcript in violation of the automatic stay.

If the injury of being deprived of a complete transcript were insufficient, Appellee also sustained an injury through the costs incurred to vindicate her rights under the Bankruptcy Code and ultimately obtain the transcript. Indeed, as Judge Opel found, Appellee incurred fees to consult with an attorney and attend legal proceedings. (Doc. 1-2, at 12). Several courts have awarded similar damages consistent with the purpose of the provision to enable debtors to vindicate their rights under the Bankruptcy Code. *See In re Grochowski*, 2012 WL 5306047, at *1 (Bankr. M.D. Pa. 2012) ("An evaluation of the testimony elicited from the Debtor permits me to find that the Debtor suffered actual damages. These damages can be itemized as follows: $.78 for postage; $6.00 for gas to attend the trial; and loss of a day's wage at $80.00."); *Rosas*, 323 B.R. at 901 ("Accordingly, the Rosases should be compensated for the day of work they both missed in order to deal with the notice.").

Additionally, contrary to Appellant's contentions, Appellee is also entitled to attorneys' fees incurred to vindicate her rights under the statute, prosecute the action, and defend the judgment on appeal. Based on the plain language of the statutory text, the phrasing "actual damages, including costs and attorneys' fees," "broaden[s] the notion of actual damages beyond the immediate injury incurred in ending the violation of a stay." *Mantiply v. Horne*, 876 F.3d 1076, 1081 (11th Cir. 2017). Other Circuits have reached similar conclusions. *See, e.g.*, *In re Schwartz-Tallard*, 803 F.3d 1095, 1101 (9th Cir. 2015) (en banc) ("[N]othing in the statute [] suggests Congress intended to cleave litigation-related fees into two categories, one recoverable by the debtor, the other not. The statute says 'including costs and attorneys' fees,' with no limitation on the remedy for which the fees were incurred. . . To [hold otherwise], we would have to read into the statute limiting language"); *Young v. Repine*, 536 F.3d 512, 522 (5th Cir. 2008) (rejecting the argument that "the statute does not provide for a successful claimant to collect the fees incurred in prosecuting their action.").

Therefore, the Bankruptcy Court was correct in determining that the Appellee was entitled to actual damages, including attorneys' fees and costs. However, because the Bankruptcy Court did not fully determine the attorneys' fees and other damages calculations, the Court will remand the case to the Bankruptcy Court for further proceedings consistent with this Opinion.

## V. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's decision will be affirmed, and this case will be remanded to the Middle District of Pennsylvania Bankruptcy Court for a calculation of attorney's fees and costs in accordance with the Bankruptcy Court Order, which provides that Aleckna must "file an itemized request for attorneys' fees and costs incurred in seeking to obtain graduation transcripts and for legal representation in this adversary proceeding."[5] A separate Order follows.

/s/ Robert D. Mariani
Robert D. Mariani
United States District Judge

---

[5] Judge Opel's opinion denied Aleckna's claim for emotional distress and punitive damages. (Doc. 1, at 16). Aleckna did not appeal that ruling. Additionally, the Court notes that on January 29, 2016, California Coast University provided three certified transcripts with graduation dates and issued a diploma to Aleckna in accordance with the Bankruptcy Court's order. (Doc. 14, at 4). Thus, the only issue for decision on remand is the determination of attorneys' fees and costs.